AMY JANE LONGO (State Bar No. 198304)
Email: longoa@sec.gov
MATTHEW T. MONTGOMERY (State Bar No. 260149)
Email: montgomerym@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy Jane Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MAYANK GUPTA and PUSHPENDRA AGRAWAL,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMERY OF THE ACTION

1. This action concerns illegal insider trading by defendant Pushpendra Agrawal ("Agrawal") in the securities of the formerly-public company QLogic Corporation ("QLogic") in advance of its acquisition through a tender offer by Cavium, Inc. ("Cavium"). Agrawal traded based on a tip concerning the tender offer from his cousin-in-law, defendant Mayank Gupta ("Gupta"), who learned about the tender offer while performing services for Cavium on behalf of his then employer, PricewaterhouseCoopers, LLP ("PWC"). Gupta is a CPA, who was assigned to PWC's Cavium audit team at the time.

2. On the morning of June 15, 2016, before the deal was announced to the public, Gupta called Agrawal, while Agrawal was driving to work. During that call, Gupta told Agrawal that Cavium was going to acquire QLogic and that QLogic was therefore a "sure thing." Upon arriving at work, Agrawal purchased 200 QLogic calls, based on Gupta's tip. During his lunch, Agrawal purchased 50 additional QLogic calls, again based on Gupta's tip.

3. After the markets closed on June 15, 2016, QLogic announced that it would be acquired by Cavium through a tender offer. On June 16, 2016, the closing price of QLogic stock rose by 9.31%. Agrawal's profits totaled of $23,785.40 on his trades.

## JURISDICTION AND VENUE

4. The Commission brings this action pursuant to Sections 21(d), 21(e) and 21A of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), and 78u-1.

5. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e), 78u-1 and 78aa.

6. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a

national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

7. Venue in this District is proper pursuant to Section 27 of the Exchange Act, because a substantial part of the acts and transactions constituting the violations alleged in this Complaint occurred within the Northern District of California, and because at least one Defendant resides or transacts business in the District.

## INTRADISTRICT ASSIGNMENT

8. This action is appropriate for assignment to the San Jose Division, pursuant to Civil Local Rule 3-2(e), because a substantial part of the events alleged herein occurred in Santa Clara County.

## DEFENDANTS

9. Pushpendra Agrawal, age 46, resides in Sunnyvale, California. Agrawal is a master engineer at a publicly traded semiconductor company.

10. Mayank Gupta, age 34, resides in Sunnyvale, California. Gupta is a certified public accountant licensed in California. Gupta was employed by PWC from September, 2012 to November, 2016. At the time of the conduct alleged in this complaint, Gupta was an assurance manager at PWC assigned to Cavium's audit team.

## OTHER RELEVANT ENTITIES

11. QLogic Corporation was a California limited liability company located in Aliso Viejo, California. QLogic was ultimately acquired by Cavium through a tender offer. Before the acquisition, QLogic's securities were registered pursuant to Section 12(b) of the Exchange Act and traded on the NASDQ Global Select Market under the symbol "QLGC."

12. Cavium, Inc. is a Delaware corporation located in San Jose, California. Cavium's securities are registered pursuant to Section 12(b) of the Exchange Act and are traded on the NA SDAQ Global Select Market under the symbol "CAVM."

13. PricewaterhouseCoopers, LLP, is a Delaware limited liability partnership and an auditing firm registered with the Public Company Accounting Oversight Board. PWC has an office in San Jose, California, at which Gupta was based. PWC was at all relevant times Cavium's independent auditor.

## FACTUAL ALLEGATIONS

### A. The Announcement

14. On June 15, 2016, QLogic's shares closed at $13.54 per share. After the close of trading on that date, QLogic and Cavium announced that QLogic would be acquired, through a tender offer, by Cavium (the "Announcement").

15. On June 16, 2016, trading volume in QLogic's shares increased by more than 1,275% compared to the prior day. QLogic's shares ultimately closed at $14.80, up $1.26, or 9.31%, from the prior day's closing price.

### B. Gupta's Access to Nonpublic Information about Cavium

16. From July 2013 through November 2016, Gupta performed audit services for Cavium as part of his employment at PWC. Gupta learned that Cavium was purchasing QLogic through a tender offer before the Announcement. Gupta learned of Cavium's impending acquisition of QLogic through his employment at PWC, including on June 8, 2016, when he assisted an employee of another auditing firm to perform due diligence related to the acquisition.

### C. Gupta's Tip to Agrawal

21. Gupta called Agrawal at 10:10 a.m. on June 15, 2016, as Mr. Agrawal was commuting by car. Agrawal answered Mr. Gupta's call but quickly hung up to pull over. Gupta called Agrawal again at 10:11 a.m., and they spoke for approximately 11 minutes.

22. During that call, Gupta told Agrawal that Cavium was buying QLogic. Gupta went on to tell Agrawal that QLogic shares were a "sure thing."

23. Agrawal understood that Gupta was telling him this information so Agrawal could trade on it. Agrawal also understood that Gupta learned the

3

information he shared though his employment at PWC, and that Gupta was not supposed to disclose this information to him.

### D. Agrawal's Illegal Trades

24. Agrawal knew the information Gupta told him about Cavium's purchase of QLogic was reliable because Gupta learned it through his work at PWC. Agrawal also believed news of Cavium's purchase of QLogic would make QLogic's price rise.

25. Shortly after his call with Gupta, Agrawal purchased 200 QLogic call options with an exercise price of $12.50 and an expiration of July 16, 2016 (*i.e.* the call options conferred the right to purchase shares of QLogic stock at a price of $12.50 on or before July 16). Agrawal paid $135.23 per options contract for a total of $27,046.58.

26. At 12:11 pm on the same day, Agrawal purchased 50 additional QLogic call options with an exercise price of $12.50 and an expiration date of June 18, 2016, at $115.37 per options contract for a total of $5,768.60.

27. Cavium and QLogic first publicly announced the tender offer after the market closed on June 15. The next day, QLogic stock closed at $14.80, up $1.26, or 9.31%, from the prior day's closing price.

28. As a result of the increase in the price of QLogic stock after the Announcement, Agrawal made a profit of $23,785.40.

### E. Gupta was Aware of His Duty to Keep Information He Learned In the Course of His Work Confidential

29. While employed at PWC, Gupta repeatedly completed PWC's Annual Compliance Confirmation ("ACC"). Gupta submitted his ACC on June 3, 2016, less than two weeks before tipping Agrawal.

30. The ACC states, among other things, that "[a]ll partners and staff are responsible for maintaining the confidentiality and security of all information in their possession," including, "[n]on-public firm information and proprietary firm information including but not limited to knowledge about […] current or potential

clients." The ACC also states that "Partners and staff are prohibited from engaging in activities that may constitute insider trading. […] and are prohibited from sharing any insider information with a third party."

31. When Gupta completed the ACC on June 3, 2016, he acknowledged in writing his "responsibility to maintain the confidentiality and security of information to which I have access." Gupta also confirmed that he "maintained the confidentiality of information to which [he] had access. . . ."

**F.    Gupta and Agrawal Agreed to Reduce Contact after the Trading**

32. At 1:23 pm on June 15, 2016, Gupta called Agrawal to see if he purchased QLogic options. Agrawal confirmed that he did. By the time of that call, Agrawal was concerned that he would be caught.

33. Gupta and Agrawal agreed to reduce their contact after the trading.

**G.    Gupta Made a Gift of Material Non-Public Information to Agrawal, a Close Family Member**

35. Gupta and Agrawal were close family members and they had a history of doing favors for each other.

36. In 2012, Gupta and his wife moved from India to Sunnyvale, the same city where Agrawal and his wife live. From 2012 forward, Gupta and his wife became close with Agrawal, his wife, and their son. Gupta referred to Agrawal as "Jijadi," or brother in law, and to Agrawal's wife as "Didi," or sister.

37. The families took at least one vacation with each other, traveling to Los Angeles and Mexico. The families also took occasional daytrips together, traveling, for example, to the Muir Woods National Monument. Each family had the other family over for meals on multiple occasions.

38. Gupta looked up to Agrawal and sought his guidance periodically. Agrawal, who was older than Gupta and had more experience living in the United States, helped Gupta negotiate the purchase of a car and sent Gupta housing leads when the Guptas needed a new apartment. Less than a month after Gupta tipped

1  Agrawal, Gupta texted Agrawal to ask him for assistance negotiating the purchase of
2  another car.
3       39.    As part of this close familial relationship, Gupta gifted to Agrawal the
4  information regarding Cavium's acquisition of QLogic so Agrawal could profit from
5  it.

## FIRST CLAIM FOR RELIEF

## Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] Thereunder

9       40.    The Commission realleges and incorporates by reference paragraphs 1
10 through 39, as though fully set forth herein.
11      41.    Defendants, with scienter, directly or indirectly:
12           a.    employed devices, schemes, or artifices to defraud;
13           b.    made untrue statements of material facts or omitted to state
14               material facts necessary in order to make the statements made, in
15               the light of the circumstances under which they were made, not
16               misleading; and
17           c.    engaged in acts, practices, or courses of business which operated
18               or would operate as a fraud or deceit upon other persons,
19               including purchasers and sellers of securities;
20 in connection with the purchase or sale of securities, by the use of means or
21 instrumentalities of interstate commerce, of the mails, or the facilities of a national
22 securities exchange.
23      42.    By reason of the foregoing, Defendants violated, and unless restrained
24 and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §
25 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

## Violations of Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] Thereunder

43. Paragraphs 1 through 39 are re-alleged and incorporated herein by reference.

44. After Cavium had taken a substantial step or steps to commence or had commenced a tender offer, Defendants:

    a. Purchased or sold or caused to be purchased or sold the securities to be sought by the tender offer while in possession of material information relating to such tender offer,

    b. which information they knew or had reason to know was nonpublic, and

    c. which they knew or had reason to know had been acquired directly or indirectly from the offering company, the issuing company, or any officer, director, partner or employee acting on behalf of the offering or issuing companies.

45. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Permanently enjoin Defendants, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

**II.**

Permanently enjoin Defendants, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from directly or indirectly violating Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] thereunder;

**III.**

Order Defendants to disgorge, with prejudgment interest, all illicit trading profits and/or other ill-gotten gains received, as a result of the conduct alleged in the Complaint;

**IV.**

Order Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**V.**

Grant such other relief as this Court may deem just and appropriate.

Dated:  September 12, 2017        */s/ Amy Jane Longo*
                                  Amy Jane Longo
                                  Matthew T. Montgomery
                                  Attorneys for Plaintiff
                                  Securities and Exchange Commission